UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN ZALE,

    Petitioner,

v.

GREG SKIPPER,

    Respondent.

Case No. 18-13814
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS [1]**

    During a road rage incident, Petitioner Martin Zale shot and killed another motorist, Derek Flemming. Zale claimed self-defense. After hearing from numerous eye witnesses, as well as Zale, a Michigan jury rejected the defense and convicted Zale of second-degree murder, Mich. Comp. Laws § 750.317, intentionally discharging a firearm from a motor vehicle, Mich. Comp. Laws § 750.234a, and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Zale was sentenced in 2015 to 25 to 50 years imprisonment on the murder conviction, a concurrent term of 2 years 8 months to 4 years imprisonment on the intentional discharge conviction, and consecutive terms of 2 years imprisonment on the felony firearm convictions. The convictions were upheld on appeal. Zale now seeks a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. He argues that the evidence was insufficient to support his convictions and that his trial counsel was ineffective in a myriad of ways. Finding no merit in the claims, the Court DENIES the petition, as well as a certificate of appealability.

**I.**

Zale was tried and convicted in Livingston County Circuit Court in September 2014. The jury heard from numerous witnesses. In affirming Zale's convictions and sentence, the Michigan Court of Appeals thoroughly summarized the trial record and underlying facts, which are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). As the appellate court described:

> Zale shot the victim, Derek Flemming, during a road-rage incident. According to Amy Flemming, the victim's wife, Derek was driving on Grand River Avenue when a truck pulled up to a stop sign so quickly that she feared it would not stop. The truck pulled behind them onto Grand River Avenue. It drove close to their vehicle, and Amy thought they would be rear-ended. Derek attempted to get into the right lane to allow the truck to pass, but the truck passed them on the right, sped up, pulled directly in front of them, and then slammed on its brakes. The truck then accelerated to the speed limit and slammed on its brakes again. Derek appeared angry after the second time.
>
> At a subsequent stop at an intersection, Derek put their vehicle into park, got out of the car, and walked toward the truck. Amy saw Derek throw his hands in the air and say, "what the * * * *'s your problem." She heard a popping noise and saw her husband's head go back before he fell to the ground. Everything happened quickly and she never saw her husband's hands touch or approach the truck.
>
> According to Zale, as he drove on Grand River Avenue, his speed varied because the vehicle in front of him was driving erratically. He was concerned because it seemed that the vehicle behind him was chasing him through amber-colored lights. While stopped at an intersection, he saw the driver of the vehicle behind him begin to approach Zale's truck. The driver began hitting Zale's truck, and Zale rolled down his window and told him to stop. The man rapidly approached Zale's window, hit him in the side of the face while yelling and screaming, and then reached for the inside handle of Zale's door. Because Zale was afraid for his life, he picked up his gun and shot the man. Zale believed the shooting was justified because the man intended to inflict great harm on him.
>
> Bus driver Sue King testified that as she was turning onto Grand River, she saw Derek walking toward a vehicle stopped in front of him. According to King, Derek appeared to be irate and was gesturing with his hands as if to say "what were you thinking." The driver's side window of the truck was up at that point. She never saw Derek touch the truck. She looked into her rear view mirror because she thought there might be "an incident," heard a gunshot, and saw Derek fall backward. At that time, she thought Derek was one to two feet from the truck and

2

> she could see daylight between it and Derek. Seven other witnesses at the intersection testified that they never saw Derek touch or reach into the truck; some emphasized how quickly everything had happened between Derek approaching the truck and the gunshot. However, Gerald Dinius testified that he saw Derek with his hand on top of the truck's rail while he was moving toward the truck, and David Clevinger testified that when he confronted Zale shortly after the incident, Zale explained that Derek had punched him in the face. Clevinger thought that the area under Zale's right eye looked puffy.

*People v. Zale*, No. 328001, 2017 WL 1109895, at *1 (Mich. Ct. App. March 21, 2017).

The Michigan Court of Appeals ultimately found that the evidence was sufficient to support Zale's convictions and that his trial counsel was not ineffective. (*Id.* at * 2–6.) Zale filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Zale*, 501 Mich. 864 (Mich. 2017).

Zale then filed his federal habeas petition raising the following claims from his direct appeal: (1) the prosecution failed to present sufficient evidence to rebut his self-defense claim and to support his convictions and (2) trial counsel was ineffective for failing to (a) move for a change of venue, (b) properly prepare defense witnesses and call other witnesses from a prior road rage incident, (c) call an expert in self-defense, and (d) attempt to rehabilitate Kyle Mead before stipulating to strike his testimony. (ECF No. 1.)

The warden has filed an answer to the habeas petition contending that it should be denied because the state court's rejection of Zale's claims did not result in a decision that was contrary to or an unreasonable application of federal law. (ECF No. 7.)

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim

3

that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407–08). This "standard is difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The term "unreasonable" refers not to "ordinary error" or even to circumstances where the petitioner offers "a strong case for relief," but rather to "'extreme malfunctions in the state criminal justice syste[m].'" *Ibid.* "In other words, a federal court may intrude on a State's 'sovereign power to punish offenders' only when a decision 'was so lacking in justification . . . beyond any possibility for fairminded disagreement.'" *Mays v. Hines*, 592 U. S. \_\_\_\_, \_\_\_ (2021) (citing *Richter*, 562 U.S. at 103)).

### III.

#### A.

In his first claim for habeas relief, Zale contends that the prosecution failed to present sufficient evidence to rebut his self-defense claim and thus, support his convictions.

4

The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original). "Circumstantial evidence may support a conviction, and such evidence need not remove every reasonable hypothesis except that of guilt." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006) (internal citations omitted).

Under AEDPA, the Court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because Jackson claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). First, "it is the responsibility of the [fact finder] to decide what conclusions should be drawn from evidence admitted at trial." *Id*. (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id*. (internal quotation marks omitted) (quoting *Cavazos*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

The Michigan Court of Appeals rejected Zale's argument that the prosecution failed to prove beyond a reasonable doubt that he did not act in self-defense. After setting forth the relevant standard of review, the appellate court explained,

> To establish that defendant committed second-degree murder, the prosecution was required to prove that there was "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Reese*, 491 Mich. 127, 143; 815 N.W.2d 85 (2012) (quotation marks and citations omitted). A person may use deadly force against another in self-defense if the person "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a). Whether a person's belief regarding the use of force is reasonable "depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v. Orlewicz*, 293 Mich. App. 96, 102; 809 N.W.2d 194 (2011). The prosecution must disprove the defendant's claim of self-defense beyond a reasonable doubt. *Reese*, 491 Mich. at 155.
>
> In this case, multiple witnesses testified that Derek did not touch the truck and that Zale shot Derek the moment after he reached the driver's side window. Other witnesses testified that the window was up, and even Zale admitted that he rolled the window down. While some witnesses testified that Derek had touched the truck or possibly hit Zale, when evidence conflicts, it is the province of the jury to weigh the conflicting evidence and reach a conclusion. *See Kanaan*, 278 Mich. App. 619. This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *Id*. We conclude that when viewing the evidence in the light most favorable to the prosecution, a reasonable juror could have found beyond a reasonable doubt that Zale did not act in self-defense when he shot Derek.

*Zale*, 2017 WL 1109895 at *2.

Before evaluating the reasonableness of this opinion, the Court notes that it is questionable whether Zale's challenge of it is cognizable on habeas review. As other judges in this district have explained:

> Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree*, 486 Mich. 693, 704, 712, 788 N.W.2d 399 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76, 815 N.W.2d 85 (2012) (quoting *Dupree*, 486 Mich. at 704, n. 11). Although under Michigan law the prosecutor is required to disprove a claim of self-defense

6

> or defense of others, *See People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required . . . ." *See Smith v. United States*, 133 S. Ct. 714, 719 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999). Petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.*; *Allen v. Redman*, 858 F.2d at 1200.

*Williams v. Jackson*, No. 2:16-CV-12042, 2017 WL 1493012, *9 (E.D. Mich. April 26, 2017) (Tarnow, J.); *see also Christian v. Romanowski*, No. 2:15-CV-12846, 2017 WL 588458, *4 (E.D. Mich. Feb. 14, 2017) (same); *Glover v. Woods*, No. 2:14-CV-12630, 2017 WL 491940, *4 (E.D. Mich. Feb. 7, 2017) (same); *Awraha v. Harry*, No. 2:14-CV-11761, 2014 WL 2005132, *3 (E.D. Mich. May 16, 2014) (same).

But even assuming the claim is cognizable, the Michigan Court of Appeals' decision is not an unreasonable application of federal law or the facts. It is supported by the testimony of numerous trial witnesses. More specifically, the victim's wife, Amy Flemming, (*see* ECF No. 6-11, PageID.1122–1129), nearby bus driver Sue King, (*see* ECF No. 6-12, PageID.1330–1336, 1351–1352), and several others, *see, e.g.,* ECF No. 6-13, PageID.1421–1427 (Randall Fry), PageID.1455–1456, 1459–1460 (Devin Cheff), PageID.1469–1470 (Andrew Harrington), PageID.1482–1489 (Gary Blair), PageID.1503–1505, 1511–1512, 1517–1519 (Ashley Southern), PageID.1536–1541 (Michael Cavasin), PageID.1569–1571, 1576 (Christopher LaFleur), testified

7

that they never saw the victim touch Zale's truck, reach into it, or hit Zale, and that the shooting occurred shortly after the victim reached the driver side of Zale's truck. This testimony, if believed by the jury, provided sufficient evidence to negate Zale's self-defense claim beyond a reasonable doubt. In other words, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, even though other evidence, such as Zale's own testimony, may have supported a self-defense claim.

The essence of a trial is conflicting evidence to be weighed and evaluated by the finder of fact. And it is the job of this fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

**B.**

Zale also believes that at numerous points throughout the trial he received ineffective assistance of counsel in violation of his sixth amendment rights.

An attorney renders constitutionally ineffective assistance where the attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable

8

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The Michigan Court of Appeals adjudicated Zale's ineffective assistance claims on the merits. *See Zale*, 2017 WL 1109895 at *3–6. The Court will address each in turn.

**1.**

Zale first contends that his trial counsel was ineffective for failing to move for a change of venue based on extensive pretrial publicity. (ECF No. 1-1, PageID.60.) In rejecting this claim, the Michigan Court of Appeals stated,

> A change of venue is warranted if there was extensive, inflammatory publicity such that jurors could not remain impartial after being exposed to it. *People v. Cline*, 276 Mich. App. 634, 639; 741 N.W.2d 563 (2007). However, "[w]hen a juror, although having formed an opinion from media coverage, swears that he is without prejudice and can try the case impartially according to the evidence, and the trial court is satisfied that the juror will do so, the juror is competent to try the case." *Id.* (quotation marks and citation omitted).
>
> In this case, the trial court asked each juror whether they had read anything or heard anything about the case during voir dire. The court then asked each juror who had read or heard about the case whether they could set aside any opinions they had formed and reach a conclusion based only on the evidence. Those who answered

>under oath that they could were seated, and those who said they could not were dismissed. Because Zale was tried only by those jurors who were competent, he cannot establish that counsel's decision not to move for a change of venue prejudiced him.

*Zale*, 2017 WL 1109895 at *4.

The state court's ruling is not an unreasonable application of federal law. The Supreme Court has held that a change of venue is warranted if pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722–24 (1961). Prejudice resulting from pretrial publicity can be presumed or actual. *Murphy v. Florida*, 421 U.S. 794, 799 (1975). But "prejudice from pretrial publicity is rarely presumed." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). Extensive media coverage and knowledge within the community of the crime and of the defendant are insufficient by themselves to create a presumption of prejudice. *Dobbert v. Florida*, 432 U.S. 282, 303 (1977); *Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir. 2002). Rather, the Supreme Court has held that presumed prejudice exists only where a conviction was "obtained in a trial atmosphere that had been utterly corrupted by press coverage." *Murphy v. Florida*, 421 U.S. 794, 798 (1975). The Sixth Circuit has held this occurs only when an "inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community." *Foley*, 488 F.3d at 387.

While the record in this case indicates that there was pretrial publicity and discussions about the case among family members and coworkers, there is no indication that a circus-like atmosphere pervaded the courtroom or the community. So there is no basis for presuming prejudice.

The second standard utilized by the Supreme Court in pretrial publicity cases is actual prejudice. Here, the court must assess the voir dire of the individual jurors. The jurors, however, need not "be totally ignorant of the facts and issues involved." *Irvin v. Dowd*, 366 U.S. 717, 722,

10

(1961). Rather, "it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 723.

During the voir dire in Zale's trial, the circuit court and the parties questioned jurors about their media exposure, their knowledge and discussions of the case, their opinions about the case, and whether they could set aside such matters and decide the case based solely on the evidence at trial. The court excused jurors who indicated that they might have difficulty doing so and only retained jurors who indicated that they could be fair and impartial. (*See* ECF No. 6-8 and 6-10.) Because there was no circus-like atmosphere, a thorough voir dire was conducted, and the seated jurors exhibited no bias, Zale cannot establish any deficient performance or prejudice from his trial counsel's decision not to seek a change of venue. *See e.g. Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004) (finding reasonable state court decision that petitioner did not receive ineffective assistance where counsel failed to renew a motion for a change of venue because trial judge and counsel conducted a thorough voir dire and the jury exhibited no bias).

**2.**

Zale further contends that his trial counsel was ineffective for allowing the prosecutor to improperly impeach three of her witnesses, contrary to Mich. R. Evidence 609, without objection or a request for a curative instruction. (ECF No. 1-1, PageID.57.) But that is the extent of Zale's argument. As the warden notes in his response, Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires the petitioner to "state the facts supporting each ground" for relief. *See also*, *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (rejecting habeas claim that was merely conclusory). Without supporting detail, the Court cannot evaluate deficient performance or prejudice.

11

Zale raised a variant of this argument on direct appeal. He argued that his counsel improperly agreed to the prosecutor's request to call a specific witness to testify about another witness's arrest. In finding that Zale had not shown that counsel's decision fell below an objective standard of reasonableness, the Michigan Court of Appeals stated that "Counsel's decisions regarding what witnesses to call and what evidence to present are matters of trial strategy" and that "[c]ontrary to Zale's argument, this witness's impeachment testimony did not violate MRE 609 because it involved an arrest, not a conviction." *Zale*, 2017 WL 1109895, at *4. If this is the issue Zale intended to raise, he has made no showing that the state court's ruling was an unreasonable application of federal law.

### 3.

Zale also complains about his trial counsel's handling of witnesses, and, in particular, Kyle Mead. According to Zale, "his counsel was ineffective when she did not properly prepare [Mead], or the other witness she excused without calling at all, by making sure, in advance of trial, that they knew the person they encountered on M-59 in a road rage incident, was the Victim. The Prosecutor requested that Mr. Mead's testimony be stricken and, inexplicably, [trial counsel] agreed." (ECF No. 1-1, PageID.57.) The Michigan Court of Appeals addressed this issue on the merits. The court stated:

> Zale argues that counsel was ineffective for agreeing to strike the testimony of witnesses to previous road-rage incidents because those witnesses could not identify Derek [Flemming] as the person involved. Again, defense counsel's decisions to call and investigate witnesses are matters of trial strategy. We reject appellate counsel's suggestion that trial counsel should have instead "prepared" the witness to identify Derek as the perpetrator when there was no indication in the record that the witnesses were sure of that fact. We instead conclude that trial counsel's decision to strike those witnesses who could not affirmatively identify Derek as the person with whom they were involved in road-rage incidents was reasonable.

*Zale*, 2017 WL 1109895, at *6 (citation omitted).

The Michigan Court of Appeals' decision is not contrary to well-established federal law that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522–23; *Strickland*, 466 U.S. at 691; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258.

Here, Zale does not explain what the potential witnesses would have testified to and how they would have helped his case. Nor does he provide any information about the extent of his trial counsel's investigation of his case. But the record establishes that trial counsel obtained favorable information from defense witnesses regarding Zale's medical condition (*see, e.g.*, ECF No. 6-14, PageID.1804–1806, 1816–1818, 1822–1825), the victim's history of confrontational conduct (*see, e.g.*, ECF No. 6-14, PageID.1833–1834, 1861–1862, 1875–1876, ECF No. 6-15, PageID.1890–1895, 1902–1905, 1917–1918, 1929–1932), and Zale's own version of events (see ECF No. 6-15, PageID.1954–1993). Trial counsel also conducted a reasonable cross-examination of prosecution witnesses to highlight weaknesses in their testimony, including certain witnesses' inability to see the victim and Zale just prior to the shooting (*see, e.g.*, ECF No. 6-12, PageId.1348–1350, ECF No. 6-13, PageID.1515–1517, 1547–1548, 1575–1576), and Zale's mental and physical state after the shooting (*see, e.g.*, ECF NO. 6-13, PageID.1607–1608, 1634, 1649, 1664–1665).

Similarly, with respect to Kyle Mead specifically, he was a witness to a prior road rage incident that allegedly involved the victim, Derek Flemming. Mead testified about a heated altercation between two drivers that nearly became physical and his involvement in attempting to calm the men. (ECF No. 6-15.) The incident Mead described was similar to that between Zale and Flemming. It appears that prior to the trial, Mead was able to identify Derek Flemming as one of

13

the drivers involved in that road rage incident, but then during trial he testified that at no time did he learn the identity of either of the drivers and that he still did not know who either driver was. (*Id*. at PageID.1945.) Thus, the prosecutor objected to Mead's testimony as prejudicial and defense counsel agreed to strike it. (*Id.* at PageID.1946–1947.)

As found by the Michigan Court of Appeals, Zale's counsel may have reasonably made this decision based on Mead's inability to identify Flemming and connect that road rage incident to the one at issue in Zale's trial. In other words, defense counsel had no response to the prosecutor's objection and cannot be deemed deficient for failing to make a meritless argument. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Counsel may have also reasonably decided not to attempt to rehabilitate Mead, i.e., by showing him a picture of the victim, because if Mead was unable or unwilling to identify the victim, such testimony would have been detrimental to the defense. *See, e.g., Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013) (stating that sometimes it may be "better to try to cast pervasive suspicion of doubt" by challenging the prosecution's case than to "strive to prove a certainty that exonerates"). And while Mead submitted an affidavit in support of Zale's federal habeas petition in which he says he can now identify Flemming (ECF No. 1-2, PageID.68–69), defense counsel could not be assured of such identification at the time of trial, especially since Mead's inability to identify the victim at trial deviated from his prior statements to counsel. Finally, given the other evidence presented in support of his self-defense theory, Zale has not shown prejudice from the loss of a witness' testimony about a different road rage incident involving the victim.

**4.**

Next, Zale claims that his trial counsel was ineffective for failing to call an expert on self-defense. (ECF No. 1-1, PageID.59.) According to Zale, such an expert would "undoubtedly have assisted the jury in seeing that [he] acted with the mindset of living in a world where, with ever increasing regularity, disgruntled citizens take the law into their own hands at the expense of others." (ECF No. 1-1, PageID.60.) The Michigan Court of Appeals addressed this argument on the merits as well. The court found that "the determination of whether a person believed that deadly force was necessary to defend him- or herself must be made on the basis of 'what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor'" and the "determination of whether an ordinary person would have believed that deadly force was necessary did not require scientific, technical, or other specialized knowledge." *Zale*, 2017 WL 1109895, at *5. Thus, the court was "not convinced that trial counsel's decision not to employ an expert witness was unreasonable or affected the outcome of Zale's case." (*Id*.)

There is no basis to overturn this ruling. As discussed, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. The failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In Zale's case, trial counsel may have reasonably decided not to call a self-defense expert because there were sufficient lay witnesses to support such a defense. This included witnesses who testified about the victim's history of confrontational behavior and his driving and angry demeanor just prior to the shooting, as well as Zale's own testimony about the incident. *See Sanford v. Stewart*, No. 2:15-CV-11171, 2017 WL 2500996, *7 (E.D. Mich. June 9, 2017) (counsel was not

15

ineffective for failing to call an expert witness where the petitioner's testimony supported a colorable claim of self-defense). Moreover, as the Michigan Court of Appeals reasonably determined, the facts and elements required to support (or negate) a theory of self-defense are within the jury's realm of knowledge and understanding such that expert testimony was unnecessary to support the defense. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). And given all of the testimony that the jury heard in support of Zale's self-defense theory, the absence of an expert did not deprive him of a substantial defense. He thus fails to establish that trial counsel was ineffective for not calling an expert witness at trial.

* * *

In sum, Zale, fails to establish that he was deprived of the effective assistance of trial counsel. Habeas relief is not warranted on these claims.

## IV.

For the reasons stated, the Court concludes that Zale is not entitled to habeas relief on his asserted claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Zale may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). This requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Zale has failed to make this showing. Accordingly, the Court **DENIES** a certificate of appealability.

But Zale could seek an appeal from this decision in good faith and thus, the Court will **GRANT** leave to proceed in forma pauperis on appeal.

This case is closed.

IT IS SO ORDERED.

Dated: June 14, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
